# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERINEO SERRANO, | CV F   06-1618 OWW DLB HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| P.L. VASQUEZ, WARDEN, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is in currently in the custody of the California Department of Corrections and Rehabilitation (CDCR), following his conviction in the Fresno County Superior Court for two counts of second degree murder in violation of California Penal Code section 187.[1]  Both counts included an enhancement for the use of a firearm in violation of Penal Code section 12022.5; thus, Petitioner is serving an aggregate term of 32 years to life.  (Exhibit 1, Abstract of Judgment, attached to Answer.)

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

1

In the instant petition, Petitioner does not challenge the validity of his conviction or sentence; rather, he challenges the Board of Parole Hearings (BPH) 2004 decision finding him unsuitable for parole.  (Exhibit 2, attached to Answer.)

Petitioner filed a state petition for writ of habeas corpus in the Fresno County Superior Court on February 10, 2005.  (Exhibit 3, attached to Answer.)  The Court denied the petition finding that the BPH's decision to deny Petitioner parole was supported by "sufficient evidence." (Id.)

On June 6, 2005, Petitioner filed a petition in the California Court of Appeal, Fifth Appellate District, which was summarily denied on June 16, 2005.  (Exhibit 4.)

Petitioner then filed a petition in the California Supreme Court, which was summarily denied on June 14, 2006.  (Exhibit 5.)

Petitioner filed the instant petition for writ of habeas corpus on November 13, 2006. Respondent filed an answer on March 5, 2007, and Petitioner filed a traverse on April 1, 2007. (Court Docs. 11, 12, 13.)

## STATEMENT OF FACTS[2]

On March 3, 1984, at approximately 3:15 a.m., Serrano [a]nd two (2) co-defendants, Estevan Arreola and Jorge Negrete went to the residence of Alejandro Hernandez located at 13887 South Peach in Selma, California.  Co-defendant Negrete was armed with a .45 caliber handgun.  Serrano and co-defendant Arreola were armed with rifles.  An argument subsequently ensured between co-defendant Negrete and Hernandez.  Co-defendant Negrete shot Hernandez twice when he attempted to flee.  He was pursued and Hernandez was able to obtain his weapon and wounded Negrete.  Serrano and co-defendant Arreola then repeatedly fired their rifles into a living room containing nine other individuals who were waking up.  Co-defendant Arreola also fired his rifle repeatedly into the house from a position outside as the three (3) men fled.  A sixteen year old male victim and a nineteen year old male victim died as a result of gunshot wounds.  Five other victims received gunshot wounds as a result of this incident.  Serrano was arrested for the instant matter on March 4, 1984.

(Petition, at 9.)

## DISCUSSION

I.    Standard of Review

---

[2] This statement of facts is taken from the petition for writ of habeas corpus, which cites the parole hearing transcript. (Petition, at 9.)

2

1       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

      Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

      The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

      As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

3

---

of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,

1  537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

2  The court looks to the last reasoned state court decision as to the basis for the state court
3  judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (citing Ylst v. Nunnemaker, 501
4  U.S. 797, 803-04 (1991)). Here, the last reasoned state court opinion of the Fresno County
5  Superior Court found that "some evidence" supported the Board's finding of unsuitability of
6  parole. **(**Exhibit 3.**)**

7  II.   Review of Claims

8  A parole release determination is not subject to all of the due process protections of an
9  adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see
10 also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979)
11 (explaining that due process is flexible and calls for procedural protections that particular
12 situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution,
13 the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated,
14 even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of
15 Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process
16 to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing,
17 Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard,"
18 Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why
19 "he falls short of qualifying for parole." Id.

20 "In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court further held that
21 'revocation of good time does not comport with 'the minimum requirements of procedural due
22 process,' unless the findings of the prison disciplinary board are supported by some evidence in
23 the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)."
24 Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court
25 need not examine the entire record, independently assess the credibility of witnesses, or re-weigh
26 the evidence. Id. Rather, the Court must determine whether there is any evidence in the record
27 that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at
28 455-56. Although Hill involved the accumulation of good time credits, the same standard applies

to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the BPH is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

Further, when an inmate is considered for the first time at the initial parole consideration hearing, "[a] parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). Cal. Code Reg. tit. 15, § 2401.

Petitioner was provided all the procedural protections outlined in Greenholtz. Petitioner was provided with advance notice of the hearing, an opportunity to submit materials for the BPH's consideration, an opportunity to be heard during the hearing, and a written decision explaining the reasons that parole was denied.

Petitioner, however, contends the BPH's decision was arbitrary and capricious and had no evidentiary support. After reviewing all relevant evidence, the Court finds that the state court decisions rejecting Petitioner's claims were not unreasonable, because the BPH's decision is supported by "some evidence."

At Petitioner's initial 2004 parole hearing, the BPH relied on several factors in denying parole including: (1) Petitioner's commitment offense was carried out in an especially callous

1  manner; (2) Petitioner had an unstable social history; (3) Petitioner had an escalating pattern of
2  criminal conduct; (4) Petitioner had not sufficiently participated in beneficial self-help; (5)
3  Petitioner's disciplinary history during incarceration; (6) Petitioner's psychiatric evaluations; and
4  (7) Petitioner's parole plans.

There is "some evidence" to support the BPH's finding that Petitioner's release will unreasonably endanger the public safety. First, the BPH found that the offense was carried out in an especially callous manner.[3] Petitioner and another individual entered a residence armed with a rifle and began shooting. The two individuals that were killed were sleeping in the house and we unaware of what was going on, and therefore had no chance to either flee or in any way defend themselves. Multiple victims were attacked, two of them died, and one was paralyzed. (Exhibit 2, at 56-57.) The motive for obtaining drug money was very trivial in relation to killing two young individuals and injuring several others. (Id.) In light of these factual circumstances, "some evidence" supports the BPH's finding that the circumstances of the commitment offense was carried out in an especially callous manner.

Petitioner's claim that the BPH may not base its suitability determination on his commitment offense, is simply unfounded. Under California law, the commitment offense and past convicted offenses alone provide a sufficient basis to deny parole. In re Dannenberg, 34 Cal.4th at 1061, 1095 (2005); Cal. Penal Code § 3041(b). In Sass v. California Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006), the Ninth Circuit found that evidence of Sass's prior offenses and the gravity of his commitment offense provided some evidence to support the Governor's denial of parole, and held that "the state court decisions upholding the denials were

---

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole regarding the committed offense. The factors to be considered include:
    (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
    (C) The victim was abused, defiled or mutilated during or after the offense.
    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

7

1  neither contrary to, nor did they involve an unreasonable application of, clearly established
2  Federal law as determined by the Supreme Court of the United States." Sass, at 1129.[4]
3  However, as discussed *infra*, this was not the sole basis for the denial of parole by the BPH.

4  In addition, Petitioner's claim that the BPH maintains an overly restrictive application of California Penal Code section 3041 and follows a policy of under-inclusion with regards to granting parole, it too is not persuasive. Initially, Petitioner has failed to establish how the BPH's alleged policy of under-inclusion adversely affected the fairness of his 2004 parole consideration hearing. Moreover, the BPH is not required to take proportionality into account until after an inmate is found suitable for parole and no longer posses an unreasonable danger to public safety. In re Dannenberg, 34 Cal.4th at 1084. In addition, this claim as stated is completely conclusory and unsupported by any evidence. See Allard v. Nelson, 423 F.2d 1216, 1217 (9th Cir.1970) (Conclusory allegations in a habeas petition fail to state a claim and do not suffice to shift the burden to the state to answer an order to show cause.); James v. Borg, 24 F.3d 20, 29 (9th Cir.1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."); Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir.1995) (holding that conclusory allegations made with no reference to the record or any document do not merit habeas relief).

Petitioner has had an unstable social history including, crossing the Mexican border into the United States on three separate occasions. Cal. Code Reg. tit. 15, § 2402(c)(3). He admitted to trafficking in narcotics and crossed the border for that purpose. (Id. at 57.) See Cal. Code Reg. tit. 15, § 2402(c)(3).

The BPH noted that Petitioner has not sufficiently participated in beneficial self-help

---

[4] Although the Ninth Circuit has recognized that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrdary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs v. Terhune. 334 F.3d 910, 916-917 (9th Cir. 2003). Recently, in Irons v. Carey, 505 F.3d 846, as amended, (July 13, 2007), petition for rehearing en banc pending, the Ninth Circuit again upheld the denial of parole based on the prisoner's commitment offense and prior criminal history, stating that "in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence." Irons, at 853. Here, at the time of Petitioner's 2004 hearing, he had only served 19 years of his 32 years to life sentence.

programming. Although Petitioner has participated in AA, it began in 2000, and it was observed that he needs a longer period of participation to achieve the full benefit of such programming. It was also noted that he had not participated in any anger management programming, and given that Petitioner's commitment offense was extremely violent, such programming was warranted. (Exhibit B, at 57-58.) Section 2402(b) states that "[a]ll relevant, reliable information available to the panel shall be considered in determining suitability for parole."

Petitioner has received five serious 115 disciplinary reports. The first occurred on July 19, 1986, for fighting. The second occurred on October 4, 1988, for possession of inmate manufactured alcohol. The third occurred on August 31, 1990, for undue familiarity. The fourth occurred on September 14, 1994, for battery on an inmate. The fifth and most recent occurred on April 23, 1998, for disobeying a direct order. (Exhibit B, at 58.) See Cal. Code Reg. tit. 15, § 2402(c)(6) (the Board may consider institutional behavior while in prison in determining whether prisoner poses an unreasonable risk of danger to society if released.).

In addition, Petitioner has suffered seven 128(a) counseling chronos. The first occurred on January 27, 1998, for an unexcused absence from class. The second occurred on August 28, 1990, for destruction of state property. The third occurred on September 18, 1991, for disrupting and talking in class. The fourth occurred on May 12, 1992, for not completing a task. The fifth occurred on June 22, 1995, for disobeying orders. The sixth occurred on November 28, 1996, for disobeying orders. The seventh occurred on June 1, 1999, for possession of contraband. (Exhibit B, at 58.)

The psychiatric evaluation dated February 17, 2004, authored by Dr. Massac, was unfavorable to Petitioner's release. Specifically, Dr. Massac noted that although Petitioner has matured in some ways, there were still questions relating to his upbringing in a dysfunctional family including a crime-ridden environment in Mexico. (Exhibit B, at 59.) Dr. Massac opined that this may have had a long-lasting affect on Petitioner's risk of re-offending, and it was difficult to predict how successful Petitioner would be to adjusting to society. (Id.)

Petitioner did not have realistic parole plans as there was nothing in writing for his plans in returning to Mexico. (Id. at 59.) It was noted that Dr. Massac opined that it would be

important for Petitioner's success to be gainfully employed and actively involved in substance abuse counseling. (Id.) Petitioner had no evidence of any employment plans. (Id. at 59-60.)

The BPH noted that the District Attorney opposed Petitioner's release. This was properly considered pursuant to Cal. Pen. Code § 3042(a) and (f)(3), and Cal. Code Reg. tit. 15, § 2402(b).

The BPH also considered factors favoring Petitioner's suitability for release, and commended Petitioner for completing the office services program, receiving his GED, and participating in AA. Cal. Code Reg. tit. 15, § 2402(d).

It is apparent the Board considered all relevant evidence in this case and carefully balanced and assessed the various factors. Those findings were supported by at least "some evidence" and it cannot be said that the state court's resolution of Petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence before the state court."

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus be DENIED; and
2.  The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served

///

///

///

and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:    **January 9, 2008**                           /s/ **Dennis L. Beck**
                                                                    UNITED STATES MAGISTRATE JUDGE